FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA 2019 AUG 26 PM 2: 15
TAMPA DIVISION

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

Fiona Robertson-Morris

Plaintiff,

v.

Case No. 8:19-CV-2133 T-WOTGW

Deputy Gregory Goepfert, individually,
unknown Jane Doe Officer, individually,
and Sheriff Bob Gualtieri in his official
capacity as Sheriff of Pinellas County

Defendants.

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, FIONA ROBERTSON-MORRIS, sues Bob Gualtieri, in his

supervisory and official capacity as Pinellas County Sheriff. and Defendant,

Deputy Goepfert, along with a Jane Doe Deputy, in their individual capacities as

Pinellas County Deputy Sheriffs, and alleges:

### Jurisdiction and Venue

1.    This is an action for damages arising under 42 U.S.C. §1983 and for

damages arising under the laws of the State of Florida.

TPA0571079

2.      This action alleges violations of the U.S. Constitution, including violation of the First, Fourth, and Fifth Amendments.

3.      This Court has original jurisdiction over this action and the parties pursuant to 42 U.S.C §1983. This Court has ancillary jurisdiction pursuant to 29 U.S.C. §1367 for all state law claims.   State law claims are brought pursuant to The Florida Tort Claims Act, Florida Statute §768.28, and the common law of the State of Florida.

4.      Venue is proper pursuant to M.D. Fla. Loc. R. 1.02(b)(4).

5.      The acts, omissions, and practices described in this Complaint occurred within the jurisdiction of the United States District Court in and for the Middle District of Florida.

6.      All conditions precedent have been met for the filing of this lawsuit, including but not limited too, the Plaintiff presenting a claim in writing to the Pinellas County Sheriff's Office ("PCSO") in the manner prescribed by law.

7.      The PCSO failed to make a final disposition to Plaintiff's written claim within ninety (90) days after it was filed. As a result, Plaintiff's claim was deemed denied pursuant o Section 768.28(6)(d), Florida Statutes.

8.      Plaintiff filed this action within the statutory period specified in Sections 95.11, and 768.28(14) of the Florida Statutes.

## Parties

9.      Plaintiff, Fiona Robertson-Morris, is over 18, and a citizen of the United States, and resident of Pinellas County, Florida.

10.      At all times material hereto, Defendant, Sheriff Gualtieri, was the duly elected Sheriff of Pinellas County, Florida, and is responsible, in his official capacity, for injury occasioned in connection therewith.

11.      At all times material hereto, Defendant, Deputy Gregory Goepfert ("Deputy Goepfert"), was duly appointed and was acting as a law enforcement officer, and or deputy Sheriff who was employed full time by the PCSO. Defendant Deputy Goepfert, is a resident of Pinellas County, Florida. He is sued herein both in his individual and official capacity.

12.      At all times material hereto, Defendant, Deputy Jane Doe ("Deputy Jane Doe"), was duly appointed and was acting as a law enforcement officer, and or, Deputy Sheriff who was employed full time by the PCSO. Defendant Deputy Jane Doe, is a resident of Pinellas County, Florida. She is sued herein both in her individual and official capacity.

## **General Allegations**

13.    On or about August 24th, 2015, Fiona Robertson-Morris accompanied her mother, Shauna Morris, in her mother's car, with her mother driving, to a pocket park located at 1268 Gulf Boulevard, Belleair Beach, FL 33786.

14    The mother and daughter had decided to travel to the Gulf in order to take some sunset photographs because Plaintiff's dying grandmother, who was in and ALF close-by under Hospice care, had requested some sunset over the Gulf photographs.

15.    Plaintiff was in a state of extreme sadness and had not slept well for weeks due to the heart wrenching and painful ordeal her beloved dying grandmother was going through in her final illness.

16.    Plaintiff was not driving and did not have possession of the car keys at any time during the events pertinent to the instant case.

17.    The car Plaintiff was a passenger in was registered to Plaintiff's mother.

18.    The park has an open entrance onto Gulf Boulevard and a parking lot that abuts the Gulf beach of Belleair Beach. It was not immediately recognized by Plaintiff, or her mother, as a private park, requiring a neighborhood sticker to park in.

19.    Once Plaintiff arrived at the parking lot with her mother, and the car was parked, Plaintiff stayed on foot outside and near the car because her dog was

in the backseat of the car and it was hot outside so she wanted to be able to remove the dog should it become too hot in the car. Her mother exited the car and walked a few feet away to the beach in order to take a few quick photographs.

20.     The keys to the car were inadvertently taken to the beach by Plaintiff's mother.

21.     Shortly after Plaintiff's mother stepped onto the beach and out of sight to the Plaintiff, Defendant, Deputy Goepfert, pulled into the parking lot and began handing out tickets to the parked cars.

22.     Plaintiff informed Defendant, Deputy Goepfert, that she would move the car but her mother had the keys. She informed Defendant, Deputy Goepfert, that she was not the registered owner of the car. She asked if she could wait just a few minutes for her mother, the owner of the car, to return with the keys.

23.     Defendant, Deputy Goepfert, refused her request and wrote a parking ticket citing her mother, as the owner of the car, for a parking infraction.

24.     As Defendant, Deputy Goepfert, wrote the ticket Plaintiff remarked to him words to the effect, "way to protect and serve." Defendant, Deputy Goepfert, indicated that Plaintiff would get into trouble if she argued with him. She became worried and began recording Defendant, Deputy Goepfert's actions and words on her phone.

25.     Plaintiff reminded Defendant, Deputy Goepfert, that there were First Amendment protections for her speech in the United States.

26.     Plaintiff remained silently standing by her mother's car and did not move as Defendant, Deputy Goepfert, turned and got back into his car.

27.     Defendant, Deputy Goepfert, remained in his car for a few moments, and Plaintiff remained silent.

28.     Defendant, Deputy Goepfert, then got out of his car and walked over to Plaintiff and placed a ticket on the driver's side windshield of Plaintiff's mother's car.

29.     Defendant, Deputy Goepfert, got back into his car and began driving off. He drove off with his driver's side window open. Plaintiff remained close to her mother's car and began walking around the car to the passenger side to place the ticket in the car.

30.     Plaintiff began cursing in a normal voice. Her voice was not raised above a normal speaking tone. She called Defendant, Deputy Goepfert, a sad bald man. She stated that Defendant, Deputy Goepfert, was a sad man who had to work a sad little job. Defendant, Deputy Goepfert, remained in his car but called out asking Plaintiff if she "wanted to go to Jail?" Plaintiff asked on what grounds? Defendant, Deputy Goepfert, then stated that she could go to jail for "disorderly conduct." Plaintiff then remarked that the ticket was $35. At that point Defendant, Deputy Goepfert, was still in his car but instead of heading out of the park he circled the car around and parked close to the Plaintiff who was still standing close to her mother's car by the passenger side examining the ticket.

31.     Plaintiff was silent. Then Defendant, Deputy Goepfert, exited his car and began walking towards Plaintiff. He stated, "are you done?" Plaintiff asked him to clarify and again stated that she had First Amendment Speech rights. At no time did Plaintiff raise her voice above a normal speaking tone.

32.     Defendant, Deputy Goepfert, replied that once some people, he motioned towards near the beach, turned around that constituted the crime of disorderly conduct on behalf of the Plaintiff. Plaintiff surmised that the members of the public on the beach may have turned around (if they did indeed turn around as stated by the Deputy) just because they saw a police car and were perhaps worried about getting ticketed.

33.     Plaintiff disputed, in a normal speaking voice, that she was not allowed to argue with Defendant, Deputy Goepfert, in a normal none elevated tone, again asserting her First Amendment rights, under the United States Constitution. At this point Defendant, Deputy Goepfert, began walking towards Plaintiff, Fiona Robertson-Morris and telling her to turn around. She asked him "for what?"  He stated that he was going to arrest her. He took his handcuffs out of their holder on his belt and placed his hand on his gun, stating that he was going to wait for backup to arrive.  At no point did Plaintiff advance towards Defendant, Deputy Goepfert. She remained where she had been standing by the passenger door of her mother's car. She continued recording the events on her phone.

34.     Defendant, Deputy Goepfert, called for a female deputy as backup. He instructed Plaintiff to keep her hands out of her pockets, she complied, but then apparently got her hands too close to her pockets again. hen she was reminded she again complied by moving her hands far away from her pockets.  Deputy Goepfer remained standing a few feet away facing her and waited for backup.

35.     Defendant, Deputy Goepfert, reiterated to Plaintiff that when she cursed and used swear words if any member of the public at the park heard her that constituted the offense of disorderly conduct for which he could arrest her.

36.     Plaintiff asked in a normal speaking voice how loud she had to be talking "over what decibel" in order to be violating the disorderly conduct law. Defendant, Deputy Goepfert, stated that as soon as she could be heard she was violating the law. He appeared not to care if he was violating her rights and stated that once she got to jail and then to court they would figure out the law. He told her to keep talking because the "more you keep up talking the better it is for me." Again, Plaintiff at no time raised her voice over the level or a normal conversational tone.

37.     While they were waiting for backup some members of the public walked by the Plaintiff and Defendant, Deputy Goepfert. Defendant, Deputy Goepfert, asked the members of the public if they had heard Plaintiff and they replied, "heard what?" indicating that they had heard nothing, and did not hear any words out of Plaintiff's mouth.

38.     A moment after the exchange in paragraph 37 above, a female officer arrived in response to Defendant, Deputy Goepfert's call for backup. He informed this officer, Deputy Jane Doe, that he was going place Plaintiff under arrest for disorderly conduct. He stated to the female deputy, Deputy Jane Doe, that Plaintiff would in his opinion, probably resist arrest. Defendant, Deputy Jane Doe, asked Plaintiff to turn around and put her hands behind her back.  Plaintiff immediately complied and was placed in hand cuffs.

39.     At no time during the events described herein, did the Plaintiff threaten or offer to do violence to Defendant, Deputy Goepfert, or Defendant, Jane Doe.

40.     As Plaintiff was being placed in hand cuffs, Plaintiff's mother arrived back from the beach and asked why her daughter was being placed in hand cuffs. When she calmly stated that the officers were violating her daughter's First Amendment rights, Defendant, Deputy Goepfert, threatened to place the mother under arrest for arguing with him.

41.     Fearing she would be placed under arrest also, plaintiff's mother ceased speaking to Defendant, Deputy Goepfert.   The mother therefore spoke quickly to her daughter and they agreed that the most judicious course was to take the family dog, who was barking in the back of the car, home so the dog would not be harmed by Defendant, Deputy Goepfert, who seemed very unreasonably hostile to Plaintiff's mother.

42.     Plaintiff was placed in the back of Defendant, Deputy Goepfert's car with her hands handcuffed behind her back.   She was left in the very hot car without air conditioning for approximately one hour.  The Plaintiff remained in the extremely hot car from approximately 8pm to 9pm.   Plaintiff was cruelly and continually verbally assaulted and harassed by both Defendant, Deputy Goepfert, and Defendant, Deputy Jane Doe for the entire time she was under arrest and with them. They continually laughed at her for sweating, and or being overweight (due to a documented thyroid condition). They made fun of  her for not wearing a bra. They made fun of her and asked her if she was trans and if she was sure she was really a girl. She informed them that she was too hot but they just laughed at her and refused to either transport her to jail or to turn on the air conditioning in the car.

43.     Plaintiff heard Defendant Deputies discussing trying to come up with things to charge Plaintiff with after the fact. Defendant, Deputy Jane Doe, Suggested charging Plaintiff with resisting arrest. After that suggestion she was indeed charged with resisting arrest.

44.     When the transport van arrived to take Plaintiff to Jail Plaintiff's Birkenstock sandal became momentarily stuck in the car. It took her a moment to retrieve it and get it back on her foot.

45.     Defendant, Deputy Goepfert, became impatient, annoyed and then angry at Plaintiff. Plaintiff assumed it was because she had not exited the car fast

enough due to her footwear malfunction. When Plaintiff approached the step of the transport van Defendant, Deputy Goepfert, violently shoved Plaintiff causing her to fall and cut her knee on the step of the van.  The van driver kindly helped her into the van.   When plaintiff arrived at the jail she had to receive medical attention because her knee was bleeding as a result of Defendant, Deputy Goepfert's intentional and violent actions.

46.     Before Plaintiff bonded out of jail sometime in the early morning of August 25th 2015, she incurred processing fees, and she hereby demands that amount to be refunded to her.

47.     Ultimately Plaintiff was charged with Obstructing or Resisting Officer (84302) and Disorderly Conduct (87703).

48. Plaintiff retained the law firm of Russo and Russo, Attorney Tim Sullivan, located at 9721 Executive Center Drive North #120 St. Petersburg, FL 33702 to represent her in the above charges.  On August 26, 2015 Plaintiff entered a written plea of not guilty through her attorney Tim Sullivan.

49.     On October 20th, 2015, Attorney Justin Reep, of the State Attorney's Office, filed a Notice of No Information on both charges, therefore, indicating that the State believed that there was insufficient evidence to prove guilt, and so declined to prosecute the case.

50.     Sometime on or about June 22nd, 2016, Plaintiff paid Russo and Russo to seek expungement of her record as she had not been adjudicated guilty of any charges.

51.     Plaintiff hereby demands damages in the amount of the attorney fees and costs she paid in order to represent her in the criminal case and expungement of record.

52.     As a direct and proximate cause of the false arrest, as described herein, Plaintiff suffered severe mental and emotional injuries as well as physical injuries to her wrists and knee. She has suffered, and will continue to suffer, physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

53.     Plaintiff continues to have fear of leaving her house, and especially fear of going to the beach and enjoying the quintessential pleasure of residing in Florida because of Defendants' actions. She suffers from nightmares, anxiety, panic attacks, depression and insomnia.

## Count I
### False Arrest, Battery, Negligent And Intentional Intentional Infliction of Emotional Distress, Against PCSO And Sheriff Bob Gualtieri In His official Capacity As Sheriff Of Pinellas County

54.     Plaintiff re-avers and incorporates by reference paragraphs 1-53 as if fully set forth herein.

55.    This action is for false arrest, battery, negligent and intentional infliction of emotional distress under Florida Law.

56.    The arrest of Plaintiff, Fiona Robertson-Morris by Defendants, Deputy Goepfert and Jane Doe, as described herein, unlawfully detained, restrained and deprived Plaintiff, Fiona Robertson-Morris, of her liberty against her will.   The detention and restriction of Plaintiff was intentional, unreasonable, nonconsensual, not warranted by the circumstances, and unlawful in that Plaintiff had not committed a criminal act for which restraint was authorized.

57.    During the course of the unlawful arrest, Defendant Deputies touched Plaintiff, searched and seized her.   Defendant Goepfert, violently shoved Plaintiff and caused injury to her unlawfully and against her consent.

58.    The above described conduct by Defendants, Deputies Goepfert, and Jane Doe, constitute a false arrest under Florida law in that they directly and intentionally procure the restraint of Plaintiff against her will.

59.    The above described false arrest was conducted by Defendants, Deputies Goepfert, and Jane Doe, while acting in the course and scope of their employment with PCSO.

60.    As a direct and proximate cause of the false arrest, as described herein, Plaintiff suffered severe mental and emotional injuries, as well as physical injuries to her wrists and knee. She has suffered, and will continue to suffer,

physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

61.    The PCSO, and sheriff Bob Gualtieri in his official capacity as Sheriff of Pinellas County are responsible for the acts and omissions of Deputies, Gregory Goepfert and Jane Doe under the doctrine of Respondeat Superior.

WHEREFORE, Plaintiff, Fiona Robertson-Morris, demands judgement against PCSO and Sheriff Bob Gualtieri in his official capacity as Sheriff of Pinellas County, for general and special damages according to proof, including those damages recoverable under Section 768.28 of the Florida Statutes, hedonic damages, and such other further relief as this court deems just and proper.

WHEREFORE, Plaintiff further demands retraining and discipline for Defendants Deputies in order to insure that they understand the law with regard to disorderly conduct and resting arrest.

WHEREFORE, Plaintiff further demands trial by jury on all issues that are triable as a matter of right.

## Count II
### False Arrest, Battery, Negligent And Intentional Intentional Infliction of Emotional Distress Against Defendants Deputies In their Individual Capacity

62.    Plaintiff re-avers and incorporates by reference paragraphs 1-53 as if fully set forth herein.

63.    This action is for false arrest, battery, negligent and intentional infliction of emotional distress under Florida Law.

64.    The arrest of Plaintiff, Fiona Robertson-Morris by Defendants, Deputy Goepfert and Jane Doe, as described herein, unlawfully detained, restrained and deprived Plaintiff, Fiona Robertson-Morris, of her liberty against her will.  The detention and restriction of Plaintiff was unreasonable, nonconsensual, not warranted by the circumstances and intentional and unlawful in that Plaintiff had not committed a criminal act for which restraint was authorized.

65.    During the course of the unlawful arrest, Defendant Deputies touched Plaintiff, searched and seized her, and caused injury to her unlawfully and against her consent. Deputy Goepfert violently shoved Plaintiff causing injury to her when she fell onto a sharp metal step as a direct result of his actions.

66.    The above described conduct by Defendants, Deputies Goepfert, and Jane Doe, constitute a false arrest under Florida law in that they directly and intentionally procure the restraint of Plaintiff against her will.

67.    The above described false arrest was alternately conducted by Defendants, Deputies Goepfert, and Jane Doe in a manner that removed them from under the protections of qualified immunity. The law is extremely well settled with regard to what actions constitute Disorderly Conduct under Florida law. There was no probable or reasonable cause to arrest Plaintiff. The Defendant Deputies mistake, as to what the requirements of the law were in order to arrest Plaintiff, was entirely unreasonable and imprudent. The well settled state of the law gave Defendants, Deputies, fair warning that their alleged treatment of Plaintiff, Fiona

Robertson-Morris was unlawful, under State law and unconstitutional.   The First Amendment, among other Amendments and laws requires that deputies respond with restraint in the face of verbal challenges to police action.   It should be clear to any deputy that they cannot react to a simple verbal challenge, even where curse words are used, by arresting the speaker.

68.   As a direct and proximate cause of the false arrest, as described herein, Plaintiff suffered severe mental and emotional injuries as well as physical injuries to her wrists and knee. She has suffered, and will continue to suffer, physical, mental, and emotional pain and suffering, mental anguish, embarrassment, and humiliation.

69.   Defendant Deputies' conduct toward Plaintiff was outrageous, going well beyond the bounds of decency. Defendants behaved toward Plaintiff like common school yard bullies, except that she was restrained in a sweltering hot car as they tormented her. She had no means of escaping their utterly odious taunts.

WHEREFORE, Plaintiff, Fiona Robertson-Morris, demands judgement against Defendants Deputies personally, for compensatory, general and special damages according to proof, including those damages recoverable under Section 768.28 of the Florida Statutes, hedonic damages, and such other further relief as this court deems just and proper.

WHEREFORE, Plaintiff further requests punitive damages based on her alternative pleadings above against individual Defendants Deputies Gregory

Goepfert, and Jane Doe, and the fact that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result from their conduct. They had a reckless and wonton disregard for the law in falsely arresting plaintiff, Fiona Robertson-Morris. They also had a reckless disregard of the likelihood of suffering, damage and injury to Plaintiff when they locked her in the backseat of a police car for approximately one hour in the sweltering and scorching late August heat by the beach in Florida. In addition, Defendant Deputies had a reckless disregard of the likelihood of suffering, damage and injury to Plaintiff when they intentionally verbally tortured plaintiff for over and hour, mercilessly making fun of, among other things, her sweating, lack of a bra, weight, and symptoms of her thyroid condition.

WHEREFORE, Plaintiff further demands trial by jury on all issues that are triable as a matter of right.

## Count III
## Claim Against All Defendants  Pursuant To 42 U.S.C. §1983  For Violations Of the First, Fourth, AND Fifth Amendments Of The United States Constitution

70.    Plaintiff re-avers and incorporates by reference paragraphs 1-53 and 67 as if fully set forth herein.

71.    This is an action for violation of Constitutional rights under 42 U.S.C. §1983 against all Defendants.

72.    While the defendants were acting under the authority of law as law enforcement officers in the employ of PCSO they subjected Plaintiff, Fiona Robertson-Morris, to the deprivation of the rights and privileges secured to her by the Constitution of the United States of America, to be secure in her person from the use of excessive force, and to be free from unreasonable search and seizure of her person under the Forth Amendment to the United States Constitution within the meaning of 42 U.S.C. §1983.

73.    As a direct and proximate result of the excessive force used by the defendants described herein the Plaintiff sustained severe mental, emotional and physical injuries.

74.    The Defendants actions in conducting a nonconsensual search and seizure of Plaintiff. Fiona Robertson-Morris' person were unreasonable, unjustified, unnecessary, unlawful and excessive, and constituted; (1) an unreasonable search and Seizure of Plaintiff under the Fourth Amendment to the United States Constitution, (2) a deprivation of liberty without due process of law under the Fifth Amendment to the United States Constitution, (3) a violation of Plaintiff's right to freely associate with others under the First Amendment to the Constitution of the United States of America, (4) a violation of Plaintiff's First Amendment rights to speak in public and express her opinions without being intimidated by law enforcement officials, and deprived of liberty due to her expressing her opinions in a way that did not breach the peace, within the meaning

of the well established law, or incite a riot, as necessary for speech to rise to the level of disorderly conduct.

WHEREFORE, Plaintiff, Fiona Robertson-Morris, demands judgement against PCSO and Sheriff Bob Gualtieri in his official capacity as Sheriff of Pinellas County, for compensatory, general and special damages according to proof, hedonic damages, and such other further relief as this court deems just and proper.

WHEREFORE, Plaintiff, Fiona Robertson-Morris, demands judgement against Defendants, Deputies Gregory Goepfert, and Jane Doe for compensatory, general and special damages according to proof, hedonic damages, and such other further relief as this court deems just and proper.

WHEREFORE, Plaintiff further requests punitive damages based on her alternative pleadings above against individual Defendants Deputies Gregory Goepfert, and Jane Doe, and the fact that they had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage would result from their conduct. They had a reckless and wonton disregard for the law in falsely arresting Plaintiff, Fiona Robertson-Morris. They acted intentionally, deliberately, wantonly, maliciously, recklessly, and oppressively toward Plaintiff, Fiona Robertson-Morris before, during and after her arrest.

WHEREFORE, Plaintiff further demands trial by jury on all issues that are triable as a matter of right.

Dated:  August 26, 2019

Respectfully Submitted,

_____

Fiona Robertson-Morris (pro se)
banyan@ij.net
305 Live Oak Lane
Largo, FL 33770